Jack SILVER, Petitioner,

v.

Walter DUNBAR et al., Respondents.

No. 66-87-C.

United States District Court
S. D. California.

Jan. 24, 1967.

actions under the old Civil Rights Act pending in this court, including Jack Silver v. R. Sunkel, No. 3467–SD–C and Jack Silver v. Dowdy, No. 3512–SD–C, both of which have been set for trial January 31, 1967. Two other actions are pending.

The court ordered the matter briefed and petitioner, the Attorney General and various of counsel in the pending cases have filed memorandums either in this action or one of the other pending civil actions.

The brief of the Attorney General is an excellent exposition of the law.

Questions presented by the writ are:

(1) Does a United States District Court have the power to issue a writ of habeas corpus ad testificandum to run out of its jurisdiction;

(2) If the court has that power should it exercise it in this case?

### I.

DOES A UNITED STATES DISTRICT COURT HAVE THE POWER TO ISSUE A WRIT OF HABEAS CORPUS AD TESTIFICANDUM TO RUN OUT OF ITS JURISDICTION.

■ The precise question which is presented by the instant petition does not appear to have previously been decided. Existing authorities however indicate that United States District Courts have the power to issue writs of *habeas corpus ad testificandum* only within their respective jurisdictions.

In Edgerly v. Kennelly, 215 F.2d 420 (7 Cir.), cert. denied, 348 U.S. 938, 75 S.Ct. 359, 99 L.Ed. 735 (1954) the petitioner was imprisoned in the United States Penitentiary at Alcatraz Island, California. He sought a writ of *habeas corpus ad testificandum* directing the warden of that institution to deliver him to the United States District Court for the Northern District of Illinois so that he could testify in a civil action for damages in which he was the plaintiff. The United States District Court denied his petition and dismissed the action upon

Jack Silver, in pro. per.

Thomas C. Lynch, Atty. Gen., Norman B. Peek, Charles R. Kocher, Deputy Attys. Gen., Los Angeles, Cal., for respondents Dunbar and Procunier.

### ORDER DENYING RELIEF AND DISMISSING PETITION.

JAMES M. CARTER, Chief Judge.

Petitioner has filed a writ of habeas corpus ad testificandum on his several

representations that his testimony was essential. On appeal it was conceded that jurisdiction to issue the writ was dependent upon the "all writs statute," 28 U.S.C.A. § 1651(a). The Court of Appeals held that the "all writs statute" did not expand the territorial boundaries of the United States District Courts and affirmed the order dismissing the action.

In Carbo v. United States, 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961) a writ of *habeas corpus ad prosequendum* was issued directing a prison official in New York to deliver Carbo to the United States District Court for the Southern District of California so that he could be prosecuted. Before the writ could be served Carbo moved to quash it, arguing on the basis of the language of 28 U.S.C. § 2241(a) that the United States District Court for the Southern District of California had no power to issue the writ to an officer located outside its territorial boundaries. The Supreme Court held that the court had power to issue the writ. The holding was based in part upon historical factors which tended to indicate that Congress was concerned with the writ of *habeas corpus ad subjiciendum* at the time when the jurisdictional limitation was imposed upon the statutory antecedents of 28 U.S.C. § 2241. Carbo v. United States, supra, at 613–620, 81 S.Ct. 338. More persuasive, however, was the Court's reliance upon the need for comity in the administration of criminal justice and upon provisions authorizing extraterritorial process in criminal matters. Carbo v. United States, supra, at 620–621, 81 S.Ct. 338.

Following the *Carbo* decision several courts made dictum statements that the writ of *habeas corpus ad testificandum* could issue extraterritorially in appropriate cases. See Duncan v. State of Maine, 195 F.Supp. 199, 201 (D.Maine 1961); United States v. McGaha, 205 F.Supp. 949, 951, (E.D.Tenn.1962). Reliance upon the *Carbo* decision was misplaced, however, because the court in *Carbo* specifically refused to decide whether the writ of *habeas corpus ad testificandum* was intended by Congress to be subject to the territorial limitation. Carbo v. United States, supra, 364 U.S. at 618 n. 13, 81 S.Ct. 338. Indeed, Yager v. Raisor, 211 F.Supp. 551 (S.D.Ind.1962) appears to be the only decision after *Carbo* which directly and properly considers the question and it followed Edgerly v. Kennelly, supra, 215 F.2d at 420, holding that the writ could not issue extraterritorially.

Furthermore, it is reasonable to conclude that the writ of *habeas corpus ad testificandum* is subject to the territorial limitation. In discussing the territorial limitations on the "great" writ of *habeas corpus ad subjiciendum* the Supreme Court stated, in Ahrens v. Clark, 335 U.S. 188, 191, 68 S.Ct. 1443, 1444, 92 L.Ed. 1898 (1947); that:

> "It would take compelling reasons to conclude that Congress contemplated the production of prisoners from remote sections, perhaps thousands of miles from the District Court that issued the writ. The opportunities for escape afforded by travel, the cost of transportation, the administrative burden of such an undertaking negate such a purpose. These are matters of policy which counsel us to construe the jurisdictional provision of the statute in the conventional sense, even though in some situations return of the prisoner to the court where he was tried and convicted might seem to offer some advantages."

If considerations involving the life and liberty of a prisoner are not sufficiently compelling to accord extraterritorial effect to the writ of *habeas corpus ad subjiciendum,* then the maintenance of a civil action for damages is not a sufficiently compelling reason to accord extraterritorial effect to the writ of *habeas corpus ad testificandum.*

Persuasive, is the fact the California law does not permit the release of prisoners for the purpose of testifying in civil actions. People v. Lawrence, 140 Cal.App.2d 133, 135, 295 P.2d 4 (1956); In re Bagwell, 26 Cal.App.2d 418, 419–421, 79 P.2d 395 (1938). Petitioner is

inaccurate in his statement that section 2621 of the California Penal Code permits his release for the purpose of testifying in civil actions. Section 2621 provides only for the release of prisoners whose testimony is required in criminal actions. Section 2623 of the Penal Code deals with the testimony of prisoners in civil actions. It provides, in pertinent part:

"If in a civil action or special proceeding a witness be a prisoner, confined in a state prison within this State, an order for his examination in the prison by deposition may be made

\* \* \*"

Finally, in determining the intent of Congress it must be remembered that "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). In view of this it is unlikely that Congress intended to give extraterritorial effect to writs of habeas corpus ad testificandum in mere civil actions for damages.

■■ Congress recently amended 28 U.S.C. § 2241 by adding the following:

"(d) Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application. The district court for the district wherein such an application is filed in the exercise of its discretion and in furtherance of justice may transfer the application to the other district court for hearing and determination." 80 Stat. 811; Public Law 89–590, 89th Cong., 2nd Sess.

The amendment does not control the question before this court, however, because Congress was clearly concerned with the "great" writ of habeas corpus ad subjiciendum rather than the writ of habeas corpus ad testificandum when it enacted the amendment. Cf., Carbo v. United States, supra, 364 U.S. 611, at 614–621, 81 S.Ct. 338. Senate Report No. 1502, U.S.Code Cong. and Admin.News 3176–3186 (1966), indicates that the concern of Congress was with redistributing the habeas corpus work load and with making less difficult the determination of factual questions in connection with petitions for writs of habeas corpus ad subjiciendum.

## II.

## IF THE COURT HAS THAT POWER SHOULD IT EXERCISE IT IN THIS CASE?

■ In Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049 (1948) a prisoner sought a writ in the nature of a writ of habeas corpus so that he could personally present oral argument in an appeal involving his life and liberty. In discussing the discretionary nature of the writ the Supreme Court stated:

" \* \* \* we emphasize that the power of a circuit court of appeals to issue such a writ is discretionary. And this discretion is to be exercised with the best interests of both the prisoner and the government in mind. If it is apparent that the request of the prisoner to argue personally reflects something more than a mere desire to be freed temporarily from the confines of the prison, that he is capable of conducting an intelligent and responsible argument, *and that his presence in the courtroom may be secured without undue inconvenience or danger,* the court would be justified in issuing the writ. *But if any of those factors were found to be negative, the court might well decline to order the prisoner to be produced.* \* \* \*" Price v. Johnston, supra, at 284–285, 68 S.Ct. at 1059. (Emphasis added).

Here it would be both expensive and inconvenient to have petitioner present in the courtroom. It would be necessary to transport petitioner several hundreds of miles from Deuel Vocational Institution and back again. Arrangements would have to be made for custody in local jail facilities. Guards would be required both during transportation and during courtroom appearances. The costs of these arrangements could be substantial, and they would not appear to be properly chargeable against either the United States or the State of California, because petitioner's actions are civil in nature.

Moreover, petitioner's appearance in the courtroom could be potentially dangerous. He is the man who is presently imprisoned under convictions for attempted murder and escape from prison. His presence in the courtroom could be a danger both to persons present in the courtroom and to the public at large.

These factors would be sufficient to warrant denial of a writ even in a case involving the life and liberty of the petitioner. They present even stronger reasons for denial where, as here, the petitioner seeks a writ for the purpose of prosecuting and testifying in a civil action for damages.

Furthermore, other avenues are open to petitioner. If his actions have any merit he presumably could obtain legal counsel on a contingent fee basis. He could testify in the actions by deposition as is provided for in section 2623 of the California Penal Code. Since this court has ruled that the applicable statute of limitation is tolled during his imprisonment he presumably could prosecute these actions after his release from prison. See Weller v. Dickson, 314 F.2d 598, 601 (9th Cir. 1963); Diaz v. Chatterton, 229 F.Supp. 19 (S.D.Cal.1964).

It is ordered that the relief requested by writ of habeas corpus is denied and the action is dismissed.

It is further ordered that the clerk mail notice of this order to the petitioner; to the Attorney General, State of California at Los Angeles and to counsel for the various defendants in the pending civil rights cases;

It is further ordered that trial date in cases Nos. 3467–C and 3512–C heretofore set for January 31 is vacated; and in order to allow petitioner time to determine what steps he wishes to take in the matter, the trial dates are reset for February 28 at 9 A.M., in cases Nos. 3467–C and 3512–C. The court will entertain an application for a further extension of the trial date if the petitioner thinks it desirable.