**Martin Karl MAURER, Plaintiff,**

**v.**

**Peter J. PITCHESS, et al., Individually and as Members of Los Angeles County Sheriffs Department, Defendants.**

**No. CV 79–3814–IH(M).**

United States District Court,
C. D. California.

Dec. 21, 1981.

Martin Karl Maurer, in pro. per.

John H. Larson, County Counsel, John W. McCauley, Deputy County Counsel, Los Angeles, Cal., for defendants.

MEMORANDUM AND ORDER RE PLAINTIFF'S APPLICATION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM

IRVING HILL, District Judge.

The plaintiff, a state prisoner, has applied to this court for a writ of *habeas corpus ad testificandum* to secure the plaintiff's presence at the trial of his above-entitled civil action. This court finds that it has the

discretionary power to issue the writ. However, in the exercise of its discretion, the court denies the plaintiff's application for the writ.

The plaintiff is a California state prisoner who is now incarcerated in Folsom state prison in Represa, California, serving a life term for a conviction of first degree murder. The plaintiff's *pro se* complaint in the above-entitled action states an action under 42 U.S.C. §§ 1983 and 1985(3). The first amended complaint essentially alleges that certain named Deputy Sheriffs employed by the Los Angeles County Sheriff's Department unlawfully searched the plaintiff's home, seized and/or destroyed the plaintiff's property, and assaulted and arrested the plaintiff on September 2, 1976. The complaint requests compensatory and punitive damages, a declaratory judgment of the illegality of the arrest of September 2, 1976, and the expungement of all records relating to the arrest.

The first amended complaint in this action originally named forty defendants. This court has, by a judgment entered on October 20, 1981, now dismissed the action as against thirty of these defendants. The action as against the remaining ten defendants is set for trial on December 15, 1981.

The plaintiff has now moved the court to issue a writ of *habeas corpus ad testificandum* to secure the plaintiff's presence in this court for the trial of the action. The individual defendants, the California Attorney General, and the United States Attorney for the Central District of California have all filed responses opposing the issuance of the writ.

## POWER TO ISSUE WRIT

*Habeas corpus* is a generic term, embracing a variety of writs known to the common law. Included among these are *habeas corpus ad subjiciendum* (the "Great Writ" used to inquire into the cause of a prisoner's restraint), *habeas corpus ad prosequendum* (used to bring a prisoner to a jurisdiction wherein he may be criminally prosecuted), and *habeas corpus ad testificandum* (used to bring a prisoner to give evidence before a

court). The prisoner plaintiff here seeks a writ of *habeas corpus ad testificandum* to bring him to this court to prosecute his *pro se* civil action. The power of the district court to issue a writ of *habeas corpus ad testificandum* is expressly conferred by 28 U.S.C. § 2241(c)(5). *Ballard v. Spradley*, 557 F.2d 476, 480 (5th Cir. 1977).

The plaintiff is a prisoner in Folsom prison located in Represa, California. The prison is located outside the geographic boundaries of the Central District of California. The State of California, through its Attorney General, contends that this court does not have the power to issue a writ of *habeas corpus ad testificandum* compelling the appearance of a prisoner being held outside the geographic boundaries of the Central District. This contention is based upon the language of the habeas corpus statute which states in relevant part, that "[w]rits of habeas corpus may be granted by . . . the district courts and any circuit judge *within their respective jurisdictions*". 28 U.S.C. § 2241(a). (Emphasis added).

The power of the district court to issue an extra-territorial writ of *habeas corpus ad testificandum* has apparently never been settled in this circuit. An analysis of this question must start with a consideration of *Carbo v. United States*, 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961). *Carbo* held that a federal district court in California had the power under 28 U.S.C. § 2241 to issue a writ of *habeas corpus ad prosequendum* ordering a New York City prison official to deliver a state prisoner incarcerated in a New York City prison to California for prosecution in a California federal district court. Based upon a detailed analysis of the statutory history of the habeas corpus statute, the Supreme Court found that Congress had specifically intended to apply the territorial limitation found in 28 U.S.C. § 2241(a) to the issuance of the writ of *habeas corpus ad subjiciendum*, but not upon the writ of *habeas corpus ad prosequendum*. In enacting the statutes which are the historical antecedents of 28 U.S.C. § 2241(a), " . . . the Congress had continual concern for the Great Writ—*habeas corpus*

*ad subjiciendum.* Exclusively to it did it give attention, and only upon its issuance did it impose a limitation". *Carbo, supra,* p. 617, 81 S.Ct. at 342. The *Carbo* court then found that the other species of the writ, including *habeas corpus ad prosequendum,* continued to derive their authority from other antecedent statutes which were never territorially limited. *Id.* Although the *habeas corpus* statute has been revised a number of times since its enactment, the *Carbo* court held that there was never any legislative intent to change the existing law with respect to the geographic limitation upon the *habeas corpus* power. *Id.,* p. 619, 81 S.Ct. at 343.

■ The Supreme Court in *Carbo* expressly declined to decide the question whether the writ of *habeas corpus ad testificandum* was subject to the territorial restriction of 28 U.S.C. § 2241(a). *Id.,* p. 618, n. 13, 81 S.Ct. at 342. The *Carbo* analysis of the statutory history of the habeas power is, however, equally applicable to the writ of *habeas corpus ad testificandum.* The geographic limitation of the habeas power was specifically intended to apply only to the "Great Writ" and not to *habeas corpus ad prosequendum.* The power of the district court to issue the writ of *habeas corpus ad prosequendum* is not geographically restricted. The statutory antecedents for *habeas corpus ad prosequendum* and *habeas corpus ad testificandum* are exactly the same. *Id.,* p. 617, 81 S.Ct. at 342. *Habeas corpus ad testificandum* is therefore not territorially limited by 28 U.S.C. Sec. 2241(a).

Circuit courts in three other circuits have held that the power of the district court to issue a writ of *habeas corpus ad testifican-*

*dum* is not territorially limited by 28 U.S.C. Sec. 2241(a). *Itel Capital Corp. v. Dennis Mining Supply and Equipment, Inc.,* 651 F.2d 405, 406–07 (5th Cir. Unit B 1981); *Stone v. Morris,* 546 F.2d 730, 737 (7th Cir. 1976); *Word v. State of North Carolina,* 406 F.2d 352, 356 n.5 (4th Cir. 1969) (dictum).[1]

Even if the geographical restrictions of 28 U.S.C. Sec. 2241(a) were found to apply to *habeas corpus ad testificandum,* that statute would confer the power to compel the attendance of the plaintiff in this court on the facts of this case:

> "Read literally, the language of Sec. 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' requiring that the prisoner be brought before the court . . . ." *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 495, 93 S.Ct. 1123, 1129, 35 L.Ed.2d 443 (1973).

"All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held . . . ." Rule 4(f), F.R.Civ.P. The plaintiff's custodian, the Folsom prison warden, is clearly subject to the process of this court pursuant to Rule 4(f), F.R.Civ.P.[2]

This court concludes that 28 U.S.C. Sec. 2241(a) does not prevent this court from issuing a writ of *habeas corpus ad testificandum* ordering the warden of Folsom prison to produce the plaintiff for trial.

## WHETHER WRIT SHOULD BE ISSUED

Having determined that the court has the power to issue the writ, the court must determine whether it should exercise that

1. Some district courts which have considered the question have found otherwise. *Silver v. Dunbar,* 264 F.Supp. 177 (S.D.Cal.1967) (Carter, C. J.); *Clark v. Hendrix,* 397 F.Supp. 966 (N.D.Ga.1975). It should be noted that both district courts relied on the reasoning in *Edgerly v. Kennelly,* 215 F.2d 420 (7th Cir. 1954), *cert. denied,* 348 U.S. 938, 75 S.Ct. 359, 99 L.Ed. 735 (1955), which was expressly overruled on this point by the *Stone v. Morris* decision, 546 F.2d at 737. Moreover, the authority of *Clark* is questionable in light of the

Fifth Circuit's recent holding in the *Itel Capital* case, *supra.*

2. The provisions of 28 U.S.C. Sec. 2241(d) appear to be inapplicable. That section allows a habeas applicant in a state with two or more district courts to apply in either the district of conviction or the district of confinement. Section 2241(d) was clearly intended to apply only to *habeas corpus ad subjiciendum. Silver v. Dunbar, supra,* p. 180.

power in this case. It is the established law of this circuit that a plaintiff in a Civil Rights action who is confined in a state prison is not entitled, as a matter of right, to appear personally at a hearing in the action. *Armstrong v. Rushing*, 352 F.2d 836, 837 (9th Cir. 1965); *Potter v. McCall*, 433 F.2d 1087, 1088 (9th Cir. 1970); *McKinney v. Boyle*, 447 F.2d 1091, 1094 (9th Cir. 1971).

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, including the right given by 28 U.S.C. Sec. 1654 to all parties in the courts of the United States to plead and conduct their own cases personally." *McKinney, supra*, p. 1094 citing *Price v. Johnston*, 334 U.S. 266, 285–286, 68 S.Ct. 1049, 1059–1060, 92 L.Ed. 1356 (1948).

■ The determination whether to issue a writ of *habeas corpus ad testificandum* to allow a prisoner plaintiff to participate in a court hearing rests within the sound discretion of the district court. *Price v. Johnston, supra*, p. 284, 68 S.Ct. at 1059; *McKinney v. Boyle, supra*, p. 1094; *Ballard v. Spradley, supra*, p. 480; *Holt v. Pitts*, 619 F.2d 558, 561 (6th Cir. 1980). In *Price v. Johnston*, the Supreme Court discussed the factors which an appellate court should consider when deciding whether to issue a writ to allow a prisoner to argue a case personally:

"[T]his discretion is to be exercised with the best interests of both the prisoner and the government in mind. If it is apparent that the request of the prisoner to argue personally reflects something more than a mere desire to be freed temporarily from the confines of the prison,

that he is capable of conducting an intelligent and responsible argument and that his presence in the courtroom may be secured without undue inconvenience or danger, the court would be justified in issuing the writ. But if any of those factors were found to be negative, the court might well decline to order the prisoner to be produced." 334 U.S. at pp. 284–285, 68 S.Ct. at p. 1059.

The Seventh Circuit Court of Appeals has discussed many of the same factors which should be considered by a trial court in determining whether a prisoner plaintiff should be brought to the trial of his civil claims under 42 U.S.C. Sec. 1983:

"In making his determination the district judge should take into account the costs and inconvenience of transporting a prisoner from his place of incarceration to the courtroom, any potential danger or security risk which the presence of a particular inmate would pose to the court, the substantiality of the matter at issue, the need for an early determination of the matter, the possibility of delaying trial until the prisoner is released, the probability of success on the merits, the integrity of the correctional system, and the interests of the inmate in presenting his testimony in person rather than by deposition." *Stone v. Morris, supra*, pp. 735–736.[3]

The plaintiff in this action has demonstrated a remarkable facility with the law. The plaintiff is clearly capable of making an intelligent courtroom presentation. At this point, the court can only speculate about whether the plaintiff's presentation would be responsible.

---

**3.** At least two other circuits have stated that "[T]he court should not base the exercise of its discretion on the probability that a prisoner will succeed on the merits of the claim ...." *Ballard v. Spradley, supra*, at 481; *see also Jerry v. Francisco*, 632 F.2d 252, 255 (3rd Cir. 1980). As discussed *infra*, the probability of this plaintiff's success on the merits cannot be evaluated. But even if some chance of success is assumed *arguendo*, it is the Court's opinion that the other factors would, on balance, strongly weigh against granting plaintiff's application.

The standards guiding the courts' discretion have been essentially the same regardless of the prisoner's circumstances. *See e.g., Itel Capital Corp. v. Dennis Mining Supply and Equipment, Inc., supra*, at 407 (prisoner was defendant in civil case and wished to conduct his own defense); *Jerry v. Francisco, supra*, at 255–56 (prisoner sought as non-party witness in civil case brought by another prisoner); *Ballard v. Spradley, supra*, at 480–81 (prisoners sought to be witnesses in their own civil cases); *Stone v. Morris, supra*, at 735–36 (prisoner had court-appointed counsel but requested to be witness in his own civil case).

■ It would be both expensive and inconvenient to bring the plaintiff to the trial of this action. It would be necessary to transport the plaintiff several hundred miles from Folsom state prison and back again. "Arrangements would have to be made for custody in local jail facilities. Guards would be required both during transportation and during courtroom appearances. The costs of those arrangements could be substantial . . . ." *Silver v. Dunbar, supra*, p. 181. There are no federal funds available to transport the plaintiff from the state prison to this court in these circumstances. *Diaz v. Chatterton*, 229 F.Supp. 19, 23 (S.D.Cal., Central Div., 1964); *but see Ballard v. Spradley, supra*, p. 481. It is likewise unclear if the state has any funds available for these purposes. In any event, neither the state nor the federal government has any obligation to subsidize the plaintiff's private civil action for damages against third party defendants.

The plaintiff's appearance in the courtroom could be potentially dangerous. The plaintiff is serving a sentence for first degree murder. The offense of which plaintiff was convicted involved a robbery-murder in which the plaintiff used a firearm in the commission of the offense. The evidence in the case was that the plaintiff committed the murder in association with fellow members of a motorcycle club or gang. (See court file in *Maurer v. Morris*, No. CV 81–3359–AAH(M)). The plaintiff is a demonstrably dangerous man. He and his associates could well view his appearance in this court as an opportunity to secure the plaintiff's escape. Here, as in *Silver v. Dunbar, supra*, the plaintiff's " . . . presence in the courtroom could be a danger both to persons present in the courtroom and to the public at large". 264 F.Supp. at 181.

On the record before the court, it is difficult to evaluate the substantiality of the matter at issue in this case. The substantiality of the plaintiff's allegations would appear to depend upon the credibility of the witnesses as determined by the factfinder.

Under the law of this circuit and the facts of this case, the court may not delay this case until the plaintiff is released from prison. The plaintiff is sentenced to a life term. This court may not stay all proceedings until some indefinite time in the future pending the plaintiff's possible release on parole. Such an indefinite stay of proceedings would constitute a denial of due process. *Wimberly v. Rogers*, 557 F.2d 671 (9th Cir. 1977).

The plaintiff's appearance in the court would affect the integrity of the correctional system.

"We can conceive of no greater interference with prison officials or prison discipline than requiring that prisoner-plaintiffs who wish to appear in civil actions unrelated to their imprisonment be transported from prison to this court by prison guards, housed in this area and released from their normal duties at the institutions during proceedings in their cases." *Seybold v. Milwaukee County Sheriff*, 276 F.Supp. 484, 488 (E.D.Wis.1967).

After careful consideration of the factors discussed above, the court concludes, in the exercise of its discretion, that the plaintiff's application for a writ of *habeas corpus ad testificandum* should be denied. The expense, the difficulty, and the potential danger of bringing the plaintiff to court outweigh any benefits that could be secured by the plaintiff's presence.

IT IS ORDERED AS FOLLOWS:

The plaintiff's application for a writ of *habeas corpus ad testificandum* is denied.